**Andrew ASHBY, Appellant,**

v.

**NATIONAL BOND FINANCE COMPANY and Thomas Higgins, Sr., Respondent.**

**No. 23182.**

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Elwyn L. Cady, Jr., Kansas City, for appellant.

Glen E. McCann, J. R. Guffey, Kansas City, for respondents.

CROSS, Judge.

This action arises from a used car sales transaction. Plaintiff, the purchaser, claims entitlement to damages, actual and punitive,

by reason of alleged fraudulent representations made by defendant Higgins, an employee of defendant National Bond Finance Company, the seller, as to the total traveled mileage of the automobile. The defendant company has filed a counter action to recover on a delinquent chattel mortgage note executed by plaintiff in the transaction, and to recover possession of the automobile.

By agreement of the parties, the case was tried to the court, without a jury. At the conclusion of plaintiff's evidence, the court found that no case of fraud had been made, and dismissed plaintiff's petition, with prejudice. After hearing evidence on the counter action, the court rendered judgment that the defendant company have possession of and title to the automobile and adjudged that it recover of plaintiff the unpaid note obligation, damages and attorneys fees. Plaintiff appeals.

Plaintiff's evidence was to the effect that he learned that the defendant company had a used 1958 Pontiac automobile for sale and entered into negotiations for its purchase. He observed that the speedometer registered only 19 miles and inquired of defendant Higgins, the defendant company's employee, if something was wrong with the instrument. Higgins said the speedometer had broken and had to be run back. Plaintiff inquired, "How many miles was on this car?" Higgins stated, "Oh, 14,000". Plaintiff purchased and took possession of the car. He offered testimony (more fully set out below) to show that after purchasing the Pontiac he learned the car had been driven 32,000 miles.

Plaintiff contends that he had established a prima facie case of fraud against defendants and that, therefore, the dismissal of his case was error. The contention is based solely upon the general effect of Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083. No specific application of that case is made to the issues at bar.

Plaintiff's case is founded upon allegations (1) that defendant's employee made a statement that the automobile had been driven only 14,000 miles, and (2) that the representation was false in that the automobile had actually been driven over 32,000. It is patent that plaintiff had the burden of showing, by competent evidence, that the statement was false.

The only evidence relative to the truth or falsity of the statement was offered by plaintiff, who testified that he had checked with automobile dealer Sam Schwartz; had located the previous owner of the Pontiac; and had found that "the true situation in regard to the speedometer was * * * 32,000 miles". The trial court sustained defendant's objection to the testimony on the ground that it was hearsay. In our opinion, the ruling was correct and in conformity with a fundamental rule of evidence. Plaintiff's attempt to narrate in evidence the purported, unsworn statement of a third person is manifestly improper.

Plaintiff also testified that the Pontiac was not in a condition consistent with being driven only 14,000 miles and that his previous car, which had 48,000 miles on it, was in better shape than the Pontiac. We do not consider the foregoing as proof that the Pontiac had been driven more than 14,000 miles or that the statement of defendant's employee was false.

We find that plaintiff failed to sustain his burden to show the falsity of the statement. Having produced no proof on the issue, he failed to establish an element necessary to sustain a case sounding in fraud. Consequently, he is not entitled to recover under his petition.

The foregoing conclusion is entirely consistent with the result reached in Jones v. West Side Buick Auto Co., supra. The court there affirmed a judgment for damages arising from defendant's false representation that a used car had a traveled mileage of 22,400 odd miles. The repre-

sentation was not verbal but was accomplished by the act of setting the speedometer back to the stated figure. It was undisputed and shown by defendant's own testimony that the car's speedometer registered 48,000 miles before defendant set it back to register 22,000 miles. The Jones case and the case before us are not comparable.

Plaintiff also contends that the trial court erred in entering judgment for defendant National Bond Finance Company. It is argued that plaintiff received no certificate of title as required by Section 301.210, V.A.M.S. Therefore, plaintiff says: the sales transaction has no validity; the purchase note and chattel mortgage executed by him are void; the defendant company is not entitled to a judgement on a void note or a judgment in replevin pursuant to a void chattel mortgage.

The defendant company insists that plaintiff's foregoing contention is not properly before this court for review, in view of Rule 79.03, V.A.M.R. which provides that all allegations of error, other than those specifically excepted, must be raised in the motion for new trial or lost for the purpose of appeal.

In his motion for a new trial, plaintiff alleges that the judgment rendered in defendant company's favor on its counter-claim and set-off is not supported by the evidence. In view of that allegation, we shall determine the sufficiency of the evidence, as it relates to the contention, to warrant entry of the judgment. For that purpose we consider the evidence further.

The sales transaction was initiated by plaintiff, who was then indebted to defendant company on a car purchase note. On about the 1st of October, 1958, he went to the company's office to pay an installment. While there he saw a list of cars for sale which included a repossessed 1958 Pontiac. He talked to defendant Higgins about the Pontiac, and said, "That's the kind of a car I'd like to have". The car was not then available for inspection but was on hand when plaintiff returned on October 13th. On that date plaintiff negotiated with defendant Higgins to purchase the car. After the discussion with Higgins about the number of miles traveled by the Pontiac, as hereinabove set out, Higgins handed plaintiff the key and invited him to "drive it around and test it". Plaintiff, a truck driver by trade and self-professedly an expert on the mechanical condition of automobiles, then drove and inspected the car for "about an hour and a half or so".

It was plaintiff's testimony that he agreed to buy the Pontiac at a stipulated price with credit for his car traded in, and that he was informed: "The title on this car— Sam Schwartz is awful slow on getting the titles out—that gal over there was—it will be a few days before you get the title". Plaintiff executed a purchase note and chattel mortgage on the Pontiac, delivered his trade-in to the company, and took possession of the Pontiac.

Plaintiff testified that some time in the last part of October he returned "to pick up the title". He estimated the time as "about a week; or approximately two weeks" after October 13th, and also as "around the 25th of October". The company's employee tendered an assigned certificate of title to plaintiff who complained that it bore a different date than the date he bought the car. He made no other objection to the certificate or its assignment, but complained that the Pontiac needed repairs. After examining the assigned title certificate, plaintiff refused to accept it or to sign an application for its transfer. He left the instrument "laying there" and never returned.

As shown by plaintiff's testimony, he has had exclusive possession, custody, control and use of the Pontiac since October 13, 1958. He has driven it over 6,000 miles. He has paid nothing on the note indebtedness, although payment has been demanded. He has refused the company's demand for possession of the automobile and has kept it at various locations in Kansas City, Kansas. Attempts to find and retake the car under a

replevin writ have been without success. Plaintiff denies any money obligation under the note and disputes the company's right to have the car.

The defendant company made a prima facie case of entitlement to recover on the note and to repossess the automobile under the mortgage when those instruments were introduced in evidence and default was shown. It was not the company's burden, as a part of its case, to show that the sale was in compliance with the statute. The note and mortgage imported validity and supporting consideration. In order to attack their validity upon the ground that they were products of a void sale, in violation of the statute, it was necessary that plaintiff plead that ground as an affirmative defense, and assume the burden to prove the allegation. C. I. T. Corp. v. Byrnes, Mo. App., 38 S.W.2d 750.

Section 301.210, V.A.M.S., provides in part as follows: "In the event of a sale * * * of a motor vehicle * * * for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, * * * and deliver the same to the buyer at the time of the delivery to him of said motor vehicle * * *".

We believe plaintiff has not sustained the burden of proof to show that the sale was not in compliance with Section 301.210. On the contrary, it is our opinion that plaintiff's own testimony shows an assignment and delivery of the title certificate as required by the statute.

Plaintiff admits that he went to the company's office to pick up the certificate and that it was there tendered to him. His sole objection to the certificate was that it bore a different date than the day he bought the car. Although not clearly expressed in his brief, it seems to be urged by plaintiff that the statute required delivery of the certificate at the immediate time he accepted delivery of the automobile.

Our courts have not construed the statute in the manner suggested by plaintiff. It has been clearly held and consistently recognized that the words "at the time" (of delivery) as used in Section 301.210 refer to the whole transaction or series of circumstances and do not literally mean "eo instanti". Saffran v. Rhode Island Ins. Co. of Providence, R. I., Mo.App., 141 S.W.2d 98. "At the time" does not mean that the execution of the note and mortgage and the assignment of the certificate of title must literally be simultaneous. The test is not whether the instruments were executed at the same precise instant, or at the same sitting, or even on the same day. The true test is whether they were executed as integral acts in a series of acts which, taken together, constitute one continuous transaction, and were so intended, so that in order to carry out the intention of the parties the instruments should be given contemporaneous operation and effect. World Inv. Co. v. Kolburt, Mo.App., 317 S.W.2d 697.

We assume from plaintiff's general assignment of the contention under discussion that he is claiming that the certificate was not delivered to him. If so, we rule that such claim has no merit. We find that the certificate was delivered in compliance with the statute. Plaintiff admits Higgins tendered the certificate to him and made its possession available. We infer that plaintiff must have taken the paper in his possession for some appreciable length of time, because he read it sufficiently to ascertain the date it bore. Plaintiff's unjustified refusal to retain the certificate in possession did not destroy the accomplished fact of its delivery to him.

In Wilson Motor Co. v. Jenkins, Mo.App., 284 S.W. 190, the buyer of an automobile claimed that no certificate of title was delivered to him. The evidence showed that the certificate was delivered to and retained by a finance company which held a mortgage on the car—in accordance with that company's custom. The court held that the

evidence was sufficient to prove delivery of a certificate of title to the car buyer.

In Pheffer v. Kleb, Mo.App., 241 S.W.2d 91, an automobile sales company sold and delivered a truck. At the time of sale, vendor had not received a title certificate and so informed the buyer. Several days later the vendor received the certificate from the prior owner. It was dispatched as registered mail to the buyer's address, but returned as undelivered. The court held that when the vendor deposited the certificate of title in the mails, addressed to the buyer, a delivery was made to him.

We find that the note and chattel mortgage are valid and affirm the judgment.

All concur.