**Janice T. RICE, Personal Representative of the Estate of Joseph Perry Rice, Jr., Deceased, Plaintiff–Respondent–Appellant,**

v.

**FARMERS & MERCHANTS INSURANCE COMPANY, Defendant–Appellant–Respondent.**

**Nos. 16606, 16625.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 1, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 1990.

Application to Transfer Denied Jan. 9, 1991.

Joseph P. Rice, III, Richey, Price, Rice, Spaeth & Heisserer, Cape Girardeau, for plaintiff-respondent-appellant.

Albert C. Lowes, Michael H. Maguire, Lowes & Drusch, Cape Girardeau, for defendant-appellant-respondent.

PREWITT, Judge.

Plaintiff sought recovery upon the collision property damage provisions of an automobile insurance policy, and vexatious damages for refusal to pay. Following nonjury trial, judgment was entered in favor of plaintiff for $19,450 but denying her claim for vexatious damages and attorneys fees. Both parties appeal.

Review is under Rule 73.01(c). Under that rule, we are to affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Robertson v. Clark Bros. Builders, Inc.* 786 S.W.2d 602, 603 (Mo.App.1990). Due deference is given to the trial court's opportunity to evaluate the witnesses' credibility. Rule 73.01(c)(2); *Robertson,* 786 S.W.2d at 603.

Plaintiff asserts that the trial court erred regarding its denial of vexatious refusal damages and attorneys fees. Defendant contends that the trial court erred in granting any relief to plaintiff because the decedent never owned the automobile their insurance was to cover and had no insurable interest in it. Defendant's contentions are considered first.

Defendant states that "plaintiff failed to show that the requirements of Section 301.-210 were followed so that plaintiff had an insurable interest which would permit property insurance to attach". Defendant claims that plaintiff failed to show that title to the vehicle was delivered to the decedent. Defendant also states that the certificate of title was not properly assigned as the signature of the prior owner was not notarized.

Section 301.210, RSMo 1986, states in part relevant here:

> **Sale and transfer of vehicles—assignment of certificate—new certificate—notice of sale to nonresident—director of revenue to keep file—other sales void.**—1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and pre-scribed by the director of revenue, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer.

> \* \* \* \* \* \*

> 4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

"It has been repeatedly held, by reason of § 301.210, that even though accompanied by full payment and physical delivery of possession, the attempted sale of a used automobile is fraudulent and void and passes no title whatever, legal or equitable [citing cases], unless, as a reasonably contemporaneous part of the transaction, the previously issued certificate of ownership with a properly completed and acknowledged assignment thereof by the seller is delivered to the buyer". *State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.,* 485 S.W.2d 397, 400 (Mo. banc 1972).

The Director of Revenue specifies that there be a notarized acknowledgment to transfer title to a motor vehicle. 12 CSR 10–23.230(2). Even though § 301.210 does not specify that there be an acknowledgment of the assignment, the cases have determined that the statute is broad enough to authorize the Director of Revenue to require such an acknowledgment and that failure to deliver a properly acknowledged assignment is insufficient to vest an ownership or an insurable interest in a vehicle. *Equity Mutual Insurance Co. v. Creson,* 737 S.W.2d 265, 266–267 (Mo.App.1987); *Moore v. State Farm Mutual Automobile Insurance Co.,* 381 S.W.2d 161, 164–165 (Mo.App.1964).

The burden of proof of nondelivery is on the party who seeks to invalidate

a transaction on that ground. *Cartmill v. Evans,* 498 S.W.2d 541, 545 (Mo.1973); *Le-Mehaute v. LeMehaute,* 585 S.W.2d 276, 281 (Mo.App.1979). Delivery of a certificate of title may be either actual or constructive. *National Indemnity Company v. Liberty Mutual Insurance Co.,* 513 S.W.2d 461, 464–466 (Mo.1974); *Galemore v. Mid-west National Fire & Casualty Ins. Co.,* 443 S.W.2d 194, 199 (Mo.App.1969). Constructive delivery occurs when, without actual transfer, the conduct of the parties is such as to be inconsistent with any supposition other than there has been a change in the nature of the holding. *Galemore,* 443 S.W.2d at 199.

On September 29, 1986, the decedent, Joseph P. Rice, Jr., went to Jarvis Motor Company in Sikeston. He became interested there in purchasing a 1986 Cadillac De-Ville which was being driven that day by William Palmer, the majority owner of Jarvis Motor Company. Rice and Palmer agreed that Rice would trade a 1982 Buick Regal which he owned for the Cadillac and pay $12,000 in cash.

There was evidence that at the time the parties agreed that the title to the Cadillac was at Wade–Palmer Motor Company in Cairo, Illinois. Palmer is also an owner of that business. The title was then sent over to Jarvis Motor Company that afternoon. Mr. Rice was taken by Mr. Palmer to Jack Stocks who takes care of the paper work at Jarvis Motor Company. Stocks testified that he and Rice signed and filled out papers to complete the transaction. The Cadillac's Illinois title was signed and was available for Mr. Rice to take. Rice did not take the title when he left Stocks' office, but Stocks thought he did. Stocks said that while he was in his office with Rice, Palmer either came in his office or came by and Rice and Palmer went out so that Rice could transfer his belongings from the Buick to the Cadillac.

Stocks never saw Rice again. On September 29, Rice called an employee of an insurance agency he owned as partners with his wife and requested coverage on the Cadillac. Defendant issued a policy covering it, commencing on 12:01 a.m. September 30. That day Rice was killed in an automobile accident while driving the DeVille. The title and other paper work were then sent by mail from Jarvis Motor Company to Mr. Rice's last known address.

The dispute is whether there is coverage for property damage to the DeVille. Before the collision the DeVille's value was $20,000 and after that, $300. There was a $250 deductible on the collision coverage.

The trial court found that the certificate of title to the Cadillac was "exhibited" by Stocks to Rice; that Stocks was under no instructions to withhold the title from him; and that there was no intent by Jarvis Motor Company to withhold the delivery of the title to Rice.

Jack Stocks testified that the certificate of title was within the packet of documents given to Joseph Rice to sign, which documents he signed in the presence of Mr. Stocks. Additionally, Erv Arnzen testified that he observed Mr. Rice in Mr. Stocks' office signing paper work and handling documents. We conclude that there was enough circumstantial evidence from which delivery, actual or constructive, could be found. Cf. *Ashby v. National Bond Finance Co.,* 343 S.W.2d 218 (Mo.App.1960). It cannot be said that defendant met its burden of showing nondelivery.

■ The title to the automobile here was issued in Illinois and although the purchase, or attempted purchase, of the automobile took place in Missouri, a notarized acknowledgment was not required. The Illinois title does not contain a place for such an acknowledgment and it is not contended that Illinois law requires such. In *Landshire Food Service, Inc. v. Coghill,* 709 S.W.2d 509, 512 (Mo.App.1986), the Eastern District of this court, considering the validity of a transfer of ownership of an automobile titled in Illinois, stated:

> although the certificate of title was not notarized, Illinois law does not require that the title be acknowledged before a notary public. Under Missouri law, notarization is not necessary if the out-of-state certificate of ownership does not provide an area for the notary requirements. We therefore hold that the statutory requisites for transfer of title were met.

This statement is valid and realistic. Defendant contends that *Moore*, supra 381 S.W.2d 161, states otherwise. We do not read it that way but even so, any such statement would be dicta as the case turned on nondelivery, not on an invalid acknowledgement or notarization.

We turn now to plaintiff's appeal. Plaintiff contends that vexatious damages under § 375.420, RSMo 1986, were improperly denied. We find otherwise. There were sufficient legal and factual issues justifying the trial court in denying such penalties.

To support the imposition of vexatious damages "plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *DeWitt v. American Family Mutual Insurance Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984). Section 375.420 is permissive, not mandatory, and gives discretion to the trier of fact. *Morris v. Reed*, 510 S.W.2d 234, 242–243 (Mo.App.1974). No abuse of discretion in not awarding vexatious damages is shown.

The judgment is affirmed.

MAUS, P.J., and CROW, J., concur.